**NOT FOR PUBLICATION**                                                    [1]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | Civil Action No. 06-1630 (FLW) |
| IAN M. WATSON McLAUGHLIN, | : | |
| | : | |
| Debtor, | : | |
| | : | |
| ALBERT RUSSO, Trustee | : | |
| | : | |
| Appellant, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| IAN McLAUGHLIN and | : | |
| MARY McLAUGHLIN, | : | |
| | : | |
| Appellees. | : | |
| | : | |

**WOLFSON, District Judge**

Appellant Albert Russo, Trustee, appeals a final Order and Opinion of the Bankruptcy Court (i) denying the relief requested in Counts I through IV of Trustee's Complaint; (ii) denying as improperly pled Trustee's contention that Trustee for Ian M. Watson ("Debtor"), by virtue of 11 U.S.C. §§ 544 and 551, holds an interest superior to that of Debtor's ex-wife, Mary McLaughlin ("Appellee"), in property to be transferred pursuant to a divorce property settlement agreement; (iii) ordering that the proceeds from the sale of Debtor's marital property being held by Trustee be turned over to Appellee; and (iv) dismissing Trustee's Adversary Complaint. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). For the following reasons, the Court will affirm the decision of the Bankruptcy Court.

## I. BACKGROUND

Ian Watson McLaughlin married Mary McLaughlin in 1977.  In 1981, the parties purchased a nine-bedroom home on a ten acre lot in Peapack-Gladstone, New Jersey ("61 Highland Avenue").  Shortly after the purchase of their residence, the McLaughlins purchased vacant land across the street ("60 Highland Avenue").  Both properties were held as tenancies by the entirety.  Mary McLaughlin never worked during the marriage.  Debtor and Mary McLaughlin had three children, all of whom were college age or older at the time of the Judgment of Divorce.

On January 29, 2001, Mary McLaughlin filed a Complaint for Divorce in the Superior Court of New Jersey, Chancery Division, Family Part.  On May 25, 2001, Debtor filed an Answer and Counterclaim.  By Order dated January 18, 2002, a State court judge awarded *pendente lite* relief to Mary McLaughlin.   The relief included shelter expenses, as defined by Schedule A of the Family Part Case Information Statement, all expenses for one motor vehicle, medical expenses for Mary and the children, and the children's educational expenses.  In addition, Debtor was ordered to pay $1,279.00 per week to Mary McLaughlin.  Both Debtor and Mary McLaughlin were "restrained and enjoined from converting, transferring, selling or in other ways disposing of any and all property" by the January 18 Order.

On April 15, 2003, Debtor and Mary McLaughlin entered into a property settlement agreement (the "Settlement Agreement"), which was incorporated into a Judgment of Divorce on that same date.  Under the Settlement Agreement, Debtor's future income was imputed to be $200,000 per year for a period of ten (10) years.  The Settlement Agreement estimated that over that ten (10) year period, alimony would be $675,000, or $67,500 per year.  In lieu of periodic payments to Mary McLaughlin, the Settlement Agreement discounted the estimated amount to

$450,000 as a lump sum.  The Settlement Agreement further provided for the payment of *pendente lite* arrears owed by Debtor to Mary McLaughlin in the amount of $191,880.00. Additionally, the Agreement provided for the payment of $750,000 to Mary McLaughlin to reflect her one-half interest in the net proceeds from the 2002 sale of the parties' Nantucket property, which had been applied to Debtor's business debts.  Pursuant to the Settlement Agreement, Mary McLaughlin was to receive, in lieu of actual payment, Debtor's one-half interest in 60 Highland Avenue and 61 Highland Avenue by quitclaim deed, as well as the personalty in the marital residence.   Debtor, however, retained his bank account, retirement savings, the cash surrender of his life insurance policies and tax refunds, valued between $300,000 and $400,000.

On April 25, 2003, ten (10) days after the parties finalized the Settlement Agreement, Debtor filed a petition in bankruptcy under the Bankruptcy Code.  An Order was entered by the Bankruptcy Court on May 12, 2003, authorizing the retention of counsel.  Thereafter, on June 4, 2003, the Debtor instituted an adversary proceeding against Arnold Field ("Field"), Lerman Sanders Realty Corp. ("Lerman Sanders Realty"), and C. David Forber ("Forber"), by filing a Complaint to Determine the Extent and Validity of Liens (the "Field/Forber Adversary Proceeding").[1]   Field responded by filing a Motion for Appointment of Trustee pursuant to 11

---

[1]     Prior to the filing of Debtor's bankruptcy petition, and the commencement of the Field/Forber Adversary Proceeding, Field had obtained a default judgment against Debtor in the amount of $1,166,615.00, Forber had obtained a default judgment in the amount of $247,064.18, and Fleet Bank had obtained a judgment against Debtor's company in the amount of $3.3 million that was personally guaranteed by Debtor.  Field thereafter moved before the Superior Court of New Jersey, Law Division, Passaic County for an Order allowing the Sheriff to enter Debtor's residence to levy upon his personal property.  Mary McLaughlin moved to intervene, which motion was granted. Judge Donato entered an Order on April 4, 2003 which provided, in relevant part:

**ORDERED** that both the personal property of Defendant, Ian M. Watson McLaughlin and his wife, Mary McLaughlin, located at 61 Highland Avenue, Peapack-Gladstone, and the real property located at 61 Highland Avenue including the vacant lots designated as Block 28, Lot 23.01, and Block 28, Lot 23.02, be and are hereby frozen and shall not be transferred, disposed, conveyed, adjudicated, and/or sold in any

U.S.C. § 1104(a)(1) or (a)(2), or in the alternative, for Conversion of the Case to Chapter 7 under 11 U.S.C. § 1112.  Forber filed an identical motion on June 25, 2003.

On July 15, 2003, following a hearing, the Bankruptcy Court entered an Order converting the Debtor's case from Chapter 11 to Chapter 7.  The Bankruptcy Court appointed Albert Russo as Trustee (the "Trustee") on July 16, 2003. On May 24, 2004, counsel for the Trustee intervened in the Adversary Proceeding and obtained summary judgment against Field and Forber, which avoided the judgment liens held by Field and Forber, pursuant to 11 U.S.C. § 544.[2]

The five-count complaint giving rise to this appeal,  Albert Russo, Trustee v. Ian McLaughlin and Mary McLaughlin, Adv. Pro. No. 03-02930, was filed by the Trustee on December 16, 2003.  Four of the five counts sought avoidance of alleged fraudulent transfers pursuant to N.J.S.A. 25:2-25, -27(a) and Sections 548(a)(1)(A) and 548(a)(1)(B) of Title 11.  One count sought authorization under 11 U.S.C. 363 (h) to sell Mary McLaughlin's interest in 61 Highland Avenue without her consent.

Subsequent to the filing of an Answer by Debtor and an Answer and Counterclaim by Mary McLaughlin, cross-motions for summary judgment were filed.  The Bankruptcy Court entered an Order on February 28, 2005, granting in part and denying in part the motions filed by the Trustee and Mary McLaughlin.  A three-day trial before the Bankruptcy Court took place on June 21, 2005, June 19, 2005 and July 26, 2005, and on December 22, 2005, the Bankruptcy Court issued

---

manner whatsoever including, but not limited to any other judicial proceeding and/or pursuant to any Property Settlement Agreement executed and/or to be executed by Defendant Ian M. Watson McLaughlin and Mary McLaughlin until further order of this Court.

[2]     Mary McLaughlin filed a complaint in the bankruptcy court on November 21, 2003, seeking a determination that marital debt owed by Debtor was non-dischargeable.  Mary McLaughlin's adversary complaint was closed on March 30, 2006, pending the outcome of the instant appeal.

an Opinion in the matter.  On January 20, 2006, the Bankruptcy Court entered an Order denying

judgment for the Trustee and for related relief and dismissing the adversary complaint.

## II.  ISSUES

The Trustee raises numerous issues for review.  They are, as stated by the Trustee:

1.  Whether the Bankruptcy Court erred by holding that the Trustee did not sustain the burden of proof on Counts Two and Three of the Trustee's Complaint that the transfer of assets under the property settlement agreement between the parties was undertaken with actual intent to hinder, delay, or defraud creditors of the Debtor pursuant to 11 U.S.C. § 548(a)(1)(A) and N.J.S.A. 25:2-25(a).

2.  Whether the Bankruptcy Court erred by holding the Trustee did not sustain the burden of proof on Counts One and Four of the Trustee's Complaint that transfers under the property settlement agreement between the parties were constructively fraudulent to creditors of the Debtor pursuant to 11 U.S.C. § 548(a)(1)(B) and N.J.S.A. 25:2-27(a).

3.  Whether the Bankruptcy Court erred by refusing to consider the Trustee's legal arguments under 11 U.S.C. § 544 and 11 U.S.C. § 551 that the April 4, 2003 restraining order of the Superior Court of New Jersey stayed any transfers under the property settlement agreement and by not applying Bankruptcy Rule 7015 to permit the pleadings to be amended to conform to the evidence presented at trial.

4.  Whether the Bankruptcy court erred by refusing to admit evidence obtained from matrimonial counsel to the parties or testimony at trial relating to the negotiation of the property settlement agreement, the appraisal report by Holzhauer & Holenstein offered by the Trustee as to the market value of 61 Highland Avenue, and Ian McLaughlin's 1040 Individual Tax Return for 2003.[3]

5.  Whether the Bankruptcy Court erred by denying the relief sought by Trustee in Count Five of the Complaint requesting a sale of 61 Highland Avenue under 11 U.S.C. § 363(b) as moot after granting the Trustee's summary judgment motion but

---

[3]     As noted by Appellee, while the Trustee raises these evidentiary issues in his statement of "Issues Presented on Appeal", the Trustee presents absolutely no argument on these issues in either his Appellate Brief or his Reply Brief submitted to this Court.  As such, the Court will deem these arguments waived.  See In re RBGSC Inv. Corp., 253 B.R. 369, 374 (E.D.Pa. 2000)(citing the requirement under Fed.R.Bankr.P. 8010(a)(1)(E) that appellant's brief 'contain the contentions of the appellant with respect to the issues presented' and invoking its discretion to deem waived those arguments not properly presented on appeal.); see also, In re Trans World Airlines, Inc., 145 F.3d 124, 132 (3d Cir. 1998)("[A] district court may in its discretion deem an argument waived if it is not presented in accordance with Rule 8010").

disallowing a sale of the marital home until the adjudication of the remaining contested issues in the adversary proceeding.[4]

6.   Whether the Bankruptcy Court erred by finding that the transfer of assets by the Debtor on the eve of bankruptcy pursuant to a matrimonial settlement agreement was not subject to claims of creditors per New Jersey law.

## III.  JURISDICTION

Jurisdiction of the district courts over appeals from orders of bankruptcy courts is governed by 28 U.S.C. § 158(a), which provides, in relevant part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees. . . ." 28 U.S.C. § 158(a).  An appeal under 28 U.S.C. § 158(a) "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts . . . ."  28 U.S.C. § 158 (c)(2).

## IV.  STANDARD OF REVIEW

"The proper standard of review to be applied by a district court when reviewing a ruling of a bankruptcy court is determined by the nature of the issues presented on appeal."  Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005).  Legal conclusions of the bankruptcy court are subject to de novo or plenary review by the district court. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997); Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir.1995). The factual determinations of the bankruptcy court are not to be set aside

---

[4]       As noted by Appellee, while the Trustee claims the Bankruptcy Court erred in denying as moot Trustee's request for sale of 61 Highland Avenue pursuant 11 U.S.C. § 363(b) as part of his "Issues Presented on Appeal", Trustee presents no argument on the issue and never even mentions the issue other than in the Conclusion portion of his Appellate Brief and Reply Brief, wherein Trustee seeks the entry of an Order by this Court authorizing the sale of the subject property under 11 U.S.C. § 363(b).  The Court will exercise its discretion and deem this issue waived based upon Trustee's failure to properly address the issue on appeal.  See In re RBGSC Inv. Corp., 253 B.R. at 374.

unless "clearly erroneous." See Fed. R. Bankr.P. 8013; Chemetron, 72 F.3d at 345; In re Indian

Palms Assocs., Ltd., 61 F.3d 197, 203 (3d Cir.1995).  On review of the factual findings of a

bankruptcy court, a district court must "give 'due regard' to the opportunity of that court to judge

first-hand the credibility of the witnesses." Fellheimer, Eichen & Braverman, P.C. v. Charter

Technologies, Inc., 57 F.3d 1215, 1223 (3d Cir.1995).  Where a matter presents mixed questions

of law and fact, it is appropriate to apply the relevant standard to each component of the issue.

Chemetron, 72 F.3d at 345.

## V.  DISCUSSION

### A.  Fed.R.Bankr.P. 7015

#### 1.  Trustee's Claim Under 11 U.S.C. § 544(a)

Although not specifically enumerated by Trustee as one of the "Issues Presented on Appeal",

Trustee devotes an entire point in his brief to his contention that pursuant to 11 U.S.C. § 544,

Trustee held a superior legal interest in the real estate owned jointly by Debtor and Mary

McLaughlin.  Trustee reasons that since no deed had yet issued under the property settlement

agreement entered into ten (10) days prior to Debtor's April 25, 2003 filing, the legal interest

held by Debtor under 11 U.S.C. § 541 at the time of filing was that of joint owner.  Thus, Trustee

argues, upon conversion of the case, Trustee held legal interest in the jointly owned real estate.

Trustee reasons that pursuant to Section 544(a)(1) and (2), "the Trustee's status as a

hypothetical lien creditor who has levied on the Debtor's property grants the bankruptcy trustee a

perfected legal interest in the Property that cannot be altered by the equitable interest claimed by

the Defendant, Mary McLaughlin."  Additionally, it is argued, that the Trustee, presumably under

544(a)(3), "holds the status of a bona fide purchase of real property who has perfected a transfer

at the time of the commencement of the case." Thus, according to Trustee, since Trustee held a superior legal status, Trustee had the ability pursuant to § 544 to avoid any transfer of property or any obligation incurred by the Debtor that is avoidable by a judgment lien creditor that levied on the property on the date of the petition. According to the Trustee, "[t]his grants the bankruptcy estate the equivalent of a perfected judicial lien on the Debtor's property that has priority over unperfected equitable interests that other parties may hold."

The statute relied upon by Trustee, 11 U.S.C. § 544(a), is known as the "strong arm" provision. Essentially, it confers upon a trustee the standing of a hypothetical judgment lien creditor, a hypothetical unsatisfied execution creditor, and, when real property is at issue, a bona fide purchaser for value. In re Bridge, 18 F.3d 195, 199 (3d Cir. 1994). "[T]he provision gives the Trustee the power to defeat any unperfected security interests as of the date of the filing." Batt v. Scully, 168 B.R. 541, 545 (D.N.J. 1994). In defining a trustee's powers over rival creditors, section 544(a) provides:

> (a) The Trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

8

> (3) a bona fide purchaser of real property, other than fixtures,
> from the debtor, against whom applicable law permits such
> transfer to be perfected, that obtains the status of a bona fide
> purchaser and has perfected such transfer at the time of the
> commencement of the case, whether or not such a purchaser
> exists.

11 U.S.C. § 544(a)(1)-(3).

The fundamental problem with the Trustee's reliance on the avoidance powers of section 544(a) is his failure to assert these rights until the submission of his trial brief on June 14, 2005. The adversary complaint filed by Trustee asserted five counts, none of which referenced the Trustee's avoidance powers under section 544(a). Appellee contends that lien avoidance under section 544(a) does not automatically create a superior interest in property, rather, it grants to the trustee only the "rights and powers" to avoid transfers. In short, Appellee contends that to invoke the strong arm powers under section 544(a), a trustee is required to file an adversary complaint to determine the extent and validity of liens or interests in property pursuant to Fed.R.Bankr.P. 7001(2). This Court agrees.

An action for avoidance under section 544(a) must be brought by way of adversary proceeding. See In re Indri, 126 B.R. 443, 445 (Bkrtcy. D.N.J. 1991)(holding that action for avoidance under 11 U.S.C. §§ 547 and 548 must be brought by adversary proceeding in light of Fed.R.Bankr.P. 7001(1) which "lists actions 'to recover money or property' among the types of actions properly brought by way of an adversary action."). Among the adversary proceedings listed in Fed.R.Bankr.P. 7001 are those "to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)." Fed.R.Bankr.P. 7001(2).

Here, Trustee does not dispute Appellee's contention that he failed to seek avoidance under section 544(a) in the Complaint.  This Court's review of the record reveals that Trustee raised the issue of his avoidance powers under section 544(a) in the Trial Brief filed seven (7) days prior to commencement of trial.  Thus, the question becomes whether the Bankruptcy Court erred in failing to amend the pleadings under Fed.R.Bankr.P. 7015.  Pursuant to Fed.R.Bankr.P. 7015, Fed.R.Civ.P. 15 is applicable to adversary proceedings.  Fed.R.Civ.P. 15(b) provides, in relevant part,

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.  If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party maintaining the party's action or defense upon the merits.  The court may grant a continuance to enable the objecting party to meet such evidence.

"The primary consideration in determining whether leave to amend under Fed.R.Civ.P. 15(b) should be granted is prejudice to the opposing party.  The principal test for prejudice in such situations is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory."  Evans Products Co. v. West American Ins. Co., 736 F.2d 920, 924 (3d Cir. 1984)(citations omitted).  Here, however, where the Trustee failed

altogether to proffer any evidence at trial in support of the application of section 544(a),

Fed.R.Bankr.P. 7015 is entirely inapplicable.

### 2.  **Trustee's Claims Under 11 U.S.C. §§ 544 and 551**

Trustee next argues that the Bankruptcy Court erred by refusing to apply Fed.R.Bankr.P.

7015(b) to permit Trustee's pleadings to be conformed to the evidence purportedly presented at

trial in connection with the alleged superior position held by Trustee as a result of Trustee having

avoided the creditors' liens under sections 544 and 551 based upon the restraining order entered

by the New Jersey Superior Court on April 4, 2003, staying any transfers under the Property

Settlement Agreement.  In light of the Bankruptcy Court's finding that the Trustee failed to raise

issues regarding section 544, and section 551, which preserves for the benefit of the estate any

transfer avoided under section 544, until the submission of the Trial Brief, the Bankruptcy Court

declined to address the merits of the Trustee's arguments on the basis that they were not properly

pled.  Moreover, the Bankruptcy Court found that application of Fed.R.Bankr.P. 7015(b), which

allows amendment of the pleadings to conform to the evidence, would be unjust since counsel to

Mary McLaughlin had no opportunity to address those issues.

As previously discussed, Fed.R.Bankr.P. 7015, by incorporating Fed.R.Civ.P. 15(b), permits

issues that have been tried by express or implied consent of the parties, to be treated as though

they had been raised in the pleadings.  This Court shall review the Bankruptcy Court's decision

to decline application of Fed.R.Bankr.P. 7015 for an abuse of discretion.  See In re Trans World

Airlines, Inc., 145 F.3d 124, 141 (3d Cir. 1998)(reviewing a bankruptcy court's determination

that amendment was permitted under Fed.R.Bankr.P. 7015 under abuse of discretion standard).

Trustee contends that the Bankruptcy Court "mischaracterized" the Trustee as raising the issue of § 551 for the first time in his Trial Brief.  According to Trustee, the issue was raised in the brief in support of summary judgment filed with the court on November 22, 2004.  Trustee cites to page 9 of the summary judgment brief, which Trustee claims, "discusses at length the issue of the automatic preservation of the avoidance of the liens of C. David Forber and Arnold Field as a result of the Trustee's cross-motion for summary judgment [in the adversary proceeding involving those creditors]."  Additionally, Trustee cites page, 13, paragraph 42 of the verified opposition to Trustee's summary judgment motion filed by Mary McLaughlin recognizing the "court's decision that the Trustee is a hypothetical junior lien creditor with a superior interest pursuant to 11 U.S.C. 544(a)."  Trustee also cites the fact that counsel for Mary McLaughlin sought the imposition of a constructive trust over the marital real estate as an alternate form of relief as further evidence that the issue was before the Bankruptcy Court.  According to Trustee, consideration of constructive trust theories necessarily requires analysis of the legal effect to be given to the Property Settlement Agreement in light of Judge Donato's restraining order staying transfers under the Property Settlement Agreement.

As previously discussed, amendment of the pleadings to conform to the evidence is permitted where there has been express or implied consent to try the issue.  Douglas v. Owens, 50 F.3d 1226, 1235-36 (1995).  "[I]f the issue . . . has not been tried with the consent of the parties, then an amendment to conform to the pleadings will not be permitted *no matter when made*."  Id. at 1236 (quoting 6A Charles A. Wright et al., Federal Practice and Procedure § 1494, at 53 (1990)(emphasis added)).    The question here is whether the record supports a finding of consent by Mary McLaughlin based upon the introduction of the issue in Trustee's motion brief

and trial brief, the introduction of the April 4, 2003 restraining order into evidence, and the

constructive trust theories raised by Mary McLaughlin in the motion and trial briefing.

There is nothing in the record to support a finding of express consent by Mary McLaughlin.

Thus, the question is whether Mary McLaughlin impliedly consented to try the issue.

"A finding that an issue was tried by implied consent depends on:

> whether the parties recognized that the unpleaded issue
> entered the case at trial, whether the evidence that supports
> the unpleaded issue was introduced at trial without
> objection, and whether a finding of trial by consent
> prejudiced the opposing party's opportunity to respond."

[Douglas, 50 F.3d at 1236(quoting Portis v. First Nat'l Bank, 34 F.3d 325, 332 (5th Cir. 1994).]

Upon careful review of the record, the Court finds that the parties recognized that the unpleaded

issue entered the case at trial.  Indeed, the Trustee raised the issue in his summary judgment brief

and Trial Brief, though rather inartfully and with some confusion as to which sections of the

Bankruptcy Code he was relying upon.  Additionally, the Trustee presumably made brief

reference to the issue when, in his opening statement, he asked the Bankruptcy Court "to find for

Plaintiff Trustee in determining the estate's interest in the marital property as if no transfer had

occurred."  [1T10:8-10.][5]  Trustee likewise incorporated the issue in his written closing statement

as follows:

> The most powerful legal argument asserted by the Trustee at
> trial and in the pretrial brief is that any transfers alleged to
> have occurred under the parties' Property Settlement
> Agreement dated April 15, 2003 could not occur due to a
> preexisting restraining order of the Superior Court of New
> Jersey dated April 4, 2003 (P-24).  Even if this Court finds a

---

[5]   "1T__:__" refers to the June 21, 2005 Transcript of Court Hearing.

> transfer under 11 U.S.C. § 101(54) was completed under the
> parties Property Settlement Agreement, all property received
> by Mary McLaughlin was encumbered due to the Trustee's
> superior status deriving from 11 U.S.C. § 544.  The Trustee
> through an adversary proceeding in this Court had the
> judgment liens of creditors Field and Forber avoided and
> preserved for the benefit of the estate under 11 U.S.C. § 551.

Nevertheless, this Court does not find implied consent on the part of Mary McLaughlin to try

the issue.  In his opening statement, counsel for Mary McLaughlin stated the following: "Our

point of view in this proceeding is that Your Honor narrowed the issues at the Summary

Judgment Motion to whether the Property Settlement Agreement was a reasonable equivalent

value of the transfer . . . ."[6]  Further, in the closing statement, counsel for Mary McLaughlin

again reiterated counsel's belief that "Cross-Motions for Summary Judgment earlier in this

adversary proceeding limited the issue for trial to whether Mary McLaughlin received reasonably

equivalent value, compared to what she would have been awarded in a hypothetical contested

divorce proceeding."  Counsel for Mary McLaughlin never addressed whether the Restraining

Order of April 4, 2003 precluded the transfers at issue and his statements on the record

unequivocally indicate his belief that the issue was not before the court.  The only evidence cited

by Trustee of Mary McLaughlin's implied consent to try this issue is the constructive trust theory

argued in the cross-motion for summary judgment.  However, the Bankruptcy Court actually

found the constructive trust theory responsive to Trustee's claim to sell 61 Highland Avenue

---

[6]        On appeal, Trustee takes issue with Mary McLaughlin's position that the issues in the plenary
hearing were limited by the Bankruptcy Court's ruling on the cross-motions for summary judgment.  However, this
Court need not address whether the plenary hearing was indeed limited by the court below as counsel's statements
are cited by this Court only to demonstrate that there was no implied consent on the part of Mary McLaughlin to try
the issues pertaining to the April 4, 2003 Restraining Order and 11 U.S.C. § 551.

under 11 U.S.C. 363(h). [2T6:23-25].[7]  Implied consent simply cannot be found in the record below.

Based on the foregoing, the Court finds no basis upon which to find that the Bankruptcy Court abused its discretion in finding that the Trustee's claims under 11 U.S.C. §§ 544 and 551 were not pled and did not warrant application of Fed.R.Bankr.P. 7015.  Alternatively, this Court agrees with the Bankruptcy Court that even if  Fed.R.Bankr.P. 7015 were applicable to the Trustee's claims, application of the Rule would result in undue prejudice to Mary McLaughlin in that she did not have a fair opportunity to address issues raised by Trustee.

## B.  Constructive Fraud

Constructive fraud is prohibited by 548(a)(1)(B), and "is presumed once the plaintiff establishes the requisite elements."  In re Fruehauf Trailer Corp., 444 F.3d 203, 210 (3d Cir. 2006).  "Those elements are: (1) the debtor had an interest in property; (2) a transfer of that interest occurred within one year of the bankruptcy filing; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the transfer resulted in no value for the debtor or the value received was not 'reasonably equivalent' to the value of the relinquished property interest."  Id. at 210-11.  The party claiming the fraudulent conveyance bears the burden of proving each of the foregoing elements by preponderance of the evidence. Id. at 211.

Trustee focuses his arguments on the issue of whether the value received by Debtor was "reasonably equivalent" to the value of the relinquished property.  In short, Trustee claims that the Bankruptcy Court erred in finding that he failed to meet his burden of proof on this issue.

---

[7]        "2T:__-__" refers to the January 10, 2005 Transcript of Motion Hearing.

The "general structure of the reasonably equivalent value analysis" requires a court to examine whether any value[8] was received by debtor from the transfer.  Id. at 212.  "Although . . . the 'totality of the circumstances' is considered in determining whether the values surrendered and gained as a result of a transfer are reasonably equivalent, a court should *not* consider the 'totality of the circumstances' in evaluating the threshold question of whether any value was received at all.  Rather, a court must consider whether, 'based on the circumstances that existed at the time' of the transfer, it was 'legitimate and reasonable' to expect some value accruing to the debtor.'" Id. (citations omitted).   However, because Trustee questions only "reasonable equivalence" this Court need only address "whether the debtor got roughly the value it gave."  Id. at 213**.**  "In conducting this factual analysis, a court does look to the 'totality of the circumstances,' including (1) the 'fair market value' of the benefit received as a result of the transfer, (2) 'the existence of an arm's-length relationship between the debtor and the transferee,' and (3) the transferee's good faith.'" Id.

   With regard to constructive fraud, raised in Counts I and IV of Trustee's Complaint, the Bankruptcy Court held that the focus under both section 548(a)(1)(B) and N.J.S.A. 25:2-27 is on whether Debtor "received less than a reasonably equivalent value" in exchange for the transfer at issue.   The Bankruptcy Court then looked to the third circuit's totality of the circumstances approach to ascertain whether reasonably equivalent value had been given.

   After reviewing case law from other jurisdictions which have applied the totality of the circumstances approach in the context of a pre-bankruptcy property settlement agreement, the

_____

   [8]        "Value" is defined "to include 'any benefit[,] . . . whether direct or indirect.'" Fruehauf Trailer Corp., 444 F.3d at 212.

Bankruptcy Court concluded that it must "attempt to ascertain what a state court would have awarded in a contested divorce proceeding." December 22, 2005 Memorandum Opinion, page 6. The Bankruptcy Court looked to New Jersey law, concluding that Mary McLaughlin would have been entitled to permanent alimony, based on the duration of the marriage and other factors, including, importantly, that the state court had awarded substantial *pendente lite* support to Mary McLaughlin, and that she would have been awarded at least half of the total assets. Id. at page 15. Because she was awarded a greater percentage of the assets under the Property Settlement Agreement, the Bankruptcy Court nevertheless examined the numbers to ascertain whether an accurate basis existed for the agreed upon settlement figures.

The Bankruptcy Court found the lump sum payout of $450,000 for permanent alimony proffered by Mary McLaughlin's expert persuasive given the standard that would have been applied by the matrimonial state court, i.e. sufficient alimony to enable Ms. McLaughlin to replicate the lifestyle enjoyed during the marriage.[9] Id. at 7. The Bankruptcy Court next looked to the repayment to Mary McLaughlin of the $750,000 from the sale of the Nantucket property. Because the Nantucket property was acquired during the marriage, the Bankruptcy Court concluded that it was subject to equitable distribution. The court rejected Trustee's expert's position that the credit was inappropriate in light of the fact that most of the major improvements to the property were funded by Debtor's company, Watson Machinery, finding the funds withdrawn from the company to fund repairs were the equivalent of salary, a marital asset, in light of the fact that Debtor had full discretion regarding his compensation. The Bankruptcy

---

[9]    The Bankruptcy Court noted that Trustee's own expert conceded that an accurate lump sum alimony figure could be as high as $300,000.

Court concluded that because the mortgage paid off by the proceeds from the sale of the

Nantucket property was a business debt of Watson Machinery, Mary McLaughlin would indeed

be entitled under New Jersey law to one half of the equity in the Nantucket property.  Therefore,

the Bankruptcy Court concluded that the $750,000 credit to Mary McLaughlin in the Property

Settlement Agreement was reasonable.  The Bankruptcy Court next found the $191,800 in

*pendente lite* support arrears reasonable in light of the fact that no evidence was adduced at trial

that would remotely suggest a modification to the award.

After determining that the amount of credits attributed to Mary McLaughlin in the amount of

$1,391,880 was appropriate, the court compared the credits to one half of the equity in 60 and 61

Highland Avenue that the Debtor relinquished.  With regard to 60 Highland Avenue, which was

sold in 2004, the Bankruptcy Court found that after capital gains taxes, each spouse would have

been entitled to $552,000.  With respect to 61 Highland Avenue, the Court found "no definitive

evidence"[10], but concluded that since the property had been listed for sale at $2,850,000 and the

highest offer ever received on the property was $2,150,000, if the court were to take the middle

range and deduct for mortgages and costs, there would have been $507,500 in equity available

for each spouse.  Thus, the Bankruptcy Court concluded, the total equity in the two properties

that Debtor gave up in the property settlement agreement was $1,029,500, which was more than

$300,000 less than the amount of credits to which Mary McLaughlin was entitled.

Based on the foregoing, the Bankruptcy Court concluded that the amount awarded to Mary

McLaughlin in the Property Settlement Agreement "was well within the range of what might

---

[10]     This finding was based on the Bankruptcy Court's ruling that the report prepared by Trustee's appraiser, Michael Holenstein, was inadmissible because it appraised the value of 61 Highland Avenue nearly a year and a half after the parties entered into the property settlement agreement.

have been awarded in a contested divorce proceeding, thus, it is reasonably equivalent value." As such, the Bankruptcy Court found no evidence of constructive fraud. This Court does not find clear error in the Bankruptcy Court's assessment of reasonable equivalence under the totality of the circumstances. See In re Fruehauf Trailer Corp., 444 F.3d 203, 215 (3d Cir. 2006)(applying "clearly erroneous" standard to reasonable equivalency review in constructive fraud claim).

In challenging the Bankruptcy Court's findings, Trustee claims error in connection with the credit the court awarded Mary McLaughlin in relation to the sale of the Nantucket property. Trustee took issue with the fact that Debtor's trial testimony did not address whether the money that funded the Nantucket purchase and improvements should have been characterized as prior distributions from Watson Machinery. Trustee further argued that the $750,000 credit in favor of Mary McLaughlin ignored the allocation of marital debt. According to Trustee, the Bankruptcy Court failed to allocate the parties' marital debt. Essentially, Trustee argued that the because Watson Machinery had contributed $200,000 toward the purchase of the Nantucket property and funded $1 million in improvements, it stands to reason that the property would be encumbered as collateral for business loans of the company. Trustee contends that the holdings in Goldman v. Goldman, 248 N.J. Super. 10 (Ch.Div. 1991), aff'd in part, 646 A.2d 504(App. Div. 1994) and Monte v. Monte, 212 N.J. Super. 557 (App. Div. 1986) compelled a finding that the Bankruptcy Court erred in failing to allocate the substantial marital debts, along with the credits given to Mary Mary McLaughlin.

Contrary to the Trustee's assertion, the Bankruptcy Court did in fact consider marital debts in computing the reasonableness of the credits given to Mary McLaughlin under the property

19

settlement agreement.  Mary McLaughlin remained responsible for all mortgages on the remaining real property and credit card or other debt.  Corporate debt was the only form of debt which she escaped.  As Mary McLaughlin points out, un-rebutted testimony was presented that the Nantucket mortgage that secured the corporate debt was executed irregularly.  This Court does not find, in light of the foregoing, that the Bankruptcy Court committed clear error in finding the $750,000 Nantucket credit reasonable.  See In re Fruehauf Trailer Corp., 444 F.3d 203, 215 (3d Cir. 2006)(applying "clearly erroneous" standard to reasonable equivalency review in constructive fraud claim).

Focusing on the Bankruptcy Court's finding of reasonably equivalent value, the Trustee next takes this Court through the testimony of his expert with respect to virtually every credit awarded Mary McLaughlin under the property settlement agreement, asserting, based on the expert's testimony, that the Bankruptcy Court's conclusion regarding the lack of fraudulent transfer is clearly erroneous.  The Court disagrees.  Mary McLaughlin proffered the testimony of her expert with respect to all of the same issues, and that testimony was clearly sufficient to support the Bankruptcy Court's finding of reasonably equivalent value.  This Court must defer to the factual findings of the Bankruptcy Court, giving "'due regard' to the opportunity of that court to judge first-hand the credibility of the witnesses." Fellheimer, Eichen & Braverman, P.C., 57 F.3d at 1223.

## C.  **Actual Fraud**

On the issue of actual fraud, the Bankruptcy Court considered Counts Two and Three of Trustee's Complaint, premised on 11 U.S.C. § 548(a)(1)(A) and N.J.S.A. 25:2-25(a), and concluded that Trustee failed to sustain his burden of proof based on the totality of the evidence

produced at trial.  Recognizing that direct evidence of fraudulent intent is difficult to come by, the Bankruptcy Court looked to the eleven "badges of fraud" identified in N.J.S.A. 25:2-26(a) to ascertain whether Debtor's conduct in entering into the property settlement agreement evidenced an actual intent to defraud creditors, other than his spouse.  The Bankruptcy Court found the following three badges present: (i) transfer to an insider; (ii) transfer occurred shortly after default judgments for major debts were entered against Debtor; and (iii) Debtor was insolvent after the transfers.  The Bankruptcy Court concluded, however, that the record did not support a finding that the transfer was of substantially all of Debtor's assets in light of his retention of his retirement account, life insurance policy, bank account, and tax refunds, which constituted a "small but significant amount in assets."  Finally, the Bankruptcy Court noted that Trustee failed to establish what the court deemed to be the most crucial badge of fraud in this case – lack of reasonably equivalent value.

On appeal, Trustee takes issue with the Bankruptcy Court's finding that reasonably equivalent value was received by Debtor based upon the court's finding that only a few statutory factors evidencing fraudulent intent were present.  According to Trustee, a majority of the badges of fraud are present in this case.  Specifically, Trustee contends that (i) the transfer constituted substantially all of Debtor's assets; (ii) the transfer was to an insider; (iii) the transfer was made at a time when Debtor was insolvent, or became insolvent as a result of the transfer; and (iv) transfer was made only after substantial debt was incurred by Debtor.  Trustee takes issue with the Bankruptcy Court's finding that reasonably equivalent value was received since relatively few statutory facts evidencing fraudulent intent were found.

21

This Court does not find the Bankruptcy Court's factual findings regarding the badges of fraud clearly erroneous.  See In re Fegeley, 118 F.3d 979, 982 (3d Cir. 1997)(basic and inferred facts are reviewed under clearly erroneous standard).  Nor does this Court find legal error in the Court's application of law to its factual findings.  As, the Bankruptcy Court noted, it is not the precise number of badges of fraud that is crucial to its determination, as they are merely a guide and not a test.  December 22, 2005 Memorandum Opinion, at page 12.  Rather, the Court must view the confluence of the badges in light of the totality of the evidence produced at trial.  Id. This Court agrees.

Finally, this Court finds the case law cited by Trustee in support of his contention that the Bankruptcy Court erred in dismissing the fraudulent conveyance claims based on actual fraud unpersuasive.  In re Roosevelt, 220 F.3d 1032 (9th Cir. 2000), although addressing allegations of fraudulent conveyance in the context of a marital settlement agreement, involved the debtor spouse's defense under section 548(c), which clearly is not at issue here.  Likewise, Trustee's reliance on In re Williams, 159 B.R. 648 (Bankr. D.R.I. 1993), remanded by 190 B.R. 728 (D.R.I. 1996), is unpersuasive in that the egregious facts concerning the debtor's attempt in that case to conceal his divorce and disclaim virtually all of the personal property he had previously listed as assets in the bankruptcy proceedings are simply not present in this case.   Finally, In re Chevrie, 2001 WL 120132 (Bankr. N.D. Ill. 2001) does not support reversal of the Bankruptcy Court's findings regarding the absence of actual fraud.  In that case, the court found the parties' divorce collusive and intended to put Debtor's interest in real property beyond the reach of his creditors.  The facts present in that case simply do not approach those extant here.  Id.

## VI.  CONCLUSION

For the foregoing reasons, the Court will affirm (i) the Bankruptcy Court's determination that Trustee's claims under 11 U.S.C. § 544 and 11 U.S.C. § 551 were not pled; and (ii) the Bankruptcy Court's denial of the relief sought in Counts I through IV of Trustee's Complaint. Further, the Court declines to address the evidentiary issues raised on appeal and the claimed error based on the Court's dismissal of its 11 U.S.C. § 363(b) claim, as those claims were not properly presented on appeal and shall be deemed waived.


/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: December 20, 2006

23